# In the United States Court of Federal Claims

No. 02-1052 V
(Filed April 6, 2010)[1]

**THIS OPINION IS FILED UNDER SEAL**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| ESTHER HALL, | * | National Childhood Vaccine |
| | * | Injury Act of 1986, 42 U.S.C. |
| *Petitioner*, | * | §§ 300aa-1 to -34 (2006); |
| | * | Attorneys' Fees and Costs; |
| v. | * | Review of Special Master's |
| | * | Determination of Reasonable |
| SECRETARY OF | * | Attorneys' Fees. |
| DEPARTMENT OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| *Respondent*. | * | |
| * * * * * * * * * * * * * * | * | |

*Richard Gage*, Cheyenne, WY, for petitioner.

*Melonie J. McCall*, United States Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Timothy P. Garren*, Director, *Mark W. Rogers*, Deputy Director, *Gabrielle M. Fielding*, Assistant Director, Washington, DC, for respondent.

_____

**OPINION AND ORDER**
_____

---

[1] This opinion is filed under seal, in accordance with Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims (Appendix B to the Rules of the United States Court of Federal Claims), and will be re-issued incorporating all redactions appropriate under that rule. The parties have fourteen days within which to propose redactions.

**Bush**, *Judge*.

Petitioner established that she was entitled to compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 (2006) (the Vaccine Act), for an injury to her shoulder caused by a hepatitis B vaccination. On July 28, 2009, the special master awarded $64,488.14 in interim attorneys' fees and costs, an amount the special master concluded was not subject to reasonable dispute (Interim Fees Opin.). On October 6, 2009, the special master awarded petitioner $22,018 in additional attorneys' fees and $3675 in additional costs (Final Fees Opin.). Now pending before the court is petitioner's motion for review of the special master's October 6, 2009 final decision on attorneys' fees and costs. In addition, the parties have filed a joint motion pursuant to Rule 60(a) of the Rules of the United States Court of Federal Claims (RCFC) for relief from the judgment of the special master. According to both petitioner and respondent, the October 6, 2009 decision failed to account for the fees and costs already paid to petitioner on an interim basis. For the reasons stated below, the court hereby denies petitioner's motion for review, grants the parties' joint motion for relief pursuant to RCFC 60(a) and affirms the special master's decision in all other respects.

## BACKGROUND

### I. Litigation History

Petitioner filed a claim under the Vaccine Act on August 23, 2002, alleging that a hepatitis B vaccination she received in 1999 had caused brachial plexus neuropathy. On September 12, 2007, the special master issued a decision holding that petitioner was entitled to compensation for her injury. Ms. Hall was awarded compensation in a decision dated December 4, 2008. Judgment was entered accordingly on January 23, 2009, and petitioner elected to accept the judgment the next day.

On April 17, 2009, Ms. Hall filed an application for interim attorneys' fees and costs, which requested $83,400.34, including $63,777.75 in attorneys' fees, $15,174.84 in attorneys' costs, and $4447.75 in costs incurred by petitioner during

the litigation.[2]  Fee Application at 1, Ex. 1 Tab A.  Because she had successfully established her entitlement to compensation under the Vaccine Act, Ms. Hall was entitled to an award of reasonable attorneys' fees and costs.[3]  42 U.S.C. § 300aa-15(e).

On July 28, 2009, the special master issued a decision awarding a portion of the attorneys' fees and costs requested by petitioner.  The special master awarded $51,854.55 in attorneys' fees and $12,633.59 in costs, which he believed were not subject to reasonable dispute.  On July 31, 2009, the parties filed a joint notice indicating that neither party would seek review of the special master's award of interim fees and costs.

On October 6, 2009, the special master issued a final decision awarding petitioner $22,018 in additional attorneys' fees and $3675 in additional costs.  On November 5, 2009, petitioner filed her motion for review of the special master's decision (Pet.'s Mot.) and a supporting memorandum of objections (Pet.'s Mem.).  In her motion for review, Ms. Hall argues that the special master erred in declining to award attorneys' fees based on the rates prevailing in the forum market of Washington, DC.

On December 7, 2009, the parties filed a joint motion for relief from the judgment of the special master pursuant to RCFC 60(a).  The parties agree that in awarding attorneys' fees and costs to petitioner, the special master's final fees decision failed to account for the fees and costs that had already been awarded to petitioner on an interim basis.  The parties' joint motion requests that the court deduct $23,461.30 from the special master's final award of attorneys' fees and costs, resulting in a total award of $2231.70, rather than $25,693.

---

[2]/ Although Ms. Hall had already been awarded compensation for her injury, she sought attorneys' fees and costs on an interim basis because she believed a portion of the requested fees were likely to be challenged by respondent and subject to a lengthy appeal process.  The special master adopted petitioner's suggestion to bifurcate the fee award into those fees that were not subject to reasonable dispute and those fees that were disputed by the parties.

[3]/ The Vaccine Act permits – but does not require – the recovery of attorneys' fees and costs by unsuccessful petitioners who acted in good faith and possessed a reasonable basis for their claims.  42 U.S.C. § 300aa-15(e).  Prevailing petitioners in Vaccine Act cases are entitled to reimbursement for reasonable attorneys' fees and costs as a matter of right.  *Id.*

## II.   The Special Master's Interim Fees Decision

In her fee application, Ms. Hall requested total attorneys' fees and costs in the amount of $83,400.34. The special master awarded petitioner $64,488.14 on an interim basis, including $51,854.55 in attorneys' fees and $12,633.59 in costs. The special master explained that the fees and costs awarded on an interim basis were not subject to reasonable dispute by the parties.

Petitioner's application for attorneys' fees covered the time period between August 2002 and April 2009. During that entire time, petitioner was represented by Mr. Richard Gage. Between August 2002 and December 2005, Mr. Gage was associated with the law firm of Gage & Moxley, P.C. Between January 2006 and the present, Mr. Gage has been practicing with the law firm of Richard Gage, P.C. Both of Mr. Gage's law firms were located in Cheyenne, Wyoming during the relevant time periods. In her fee application, however, petitioner requested reimbursement for attorneys' fees at dramatically different hourly rates for those two periods of time. The attorneys' fees awarded by the special master for work performed between 2002 and 2005 were not challenged by respondent and are not at issue in this case.[4]

For legal work performed between 2006 and 2009, petitioner sought attorneys' fees for Mr. Gage based on rates ranging from $360 to $410 per hour. Fee Application Ex. 1 Tab D. Petitioner's requested fees were based on forum rates derived from the *Laffey* matrix, which is discussed *infra* at note 6, and would have resulted in a total fee award of $34,938.50 for the relevant time period. The government objected to the fees proposed by petitioner, but stated that it would not object to an hourly rate of $200 for Mr. Gage, which was the rate awarded to Mr. Gage in an earlier case in 2004. The special master adjusted respondent's proposed hourly rate for inflation and awarded petitioner interim attorneys' fees based on hourly rates ranging from $219 to $239 for the period between 2006 and 2009, which resulted in a total interim fee award of $23,461.30 for that period. Respondent has not challenged the fees awarded on an interim basis for the years 2006 through 2009. There is a dispute between the parties, however, regarding the difference between the interim fee award and the total fee award requested by

---

[4]/ For legal work performed between August 2002 and December 2005, petitioner requested fees for Mr. Gage based on hourly rates between $175 and $200. Fee Application Ex. 1 Tab E.

4

petitioner. That difference arises as a result of the higher forum rates sought by Mr. Gage for the period between 2006 and 2009. With respect to attorneys' fees, the amount in dispute for the period between 2006 and 2009 is $11,477.20.[5] The special master's interim fees decision stated that the disputed portion of petitioner's fee request would be addressed in a separate decision on attorneys' fees and costs.

### III.     The Special Master's Final Fees Decision

On October 6, 2009, the special master issued a final decision awarding petitioner $22,018 in attorneys' fees and $3675 in costs. As noted by the parties in their RCFC 60(a) motion, the final fees decision indicated that the fees and costs awarded in that final decision were *in addition to* the attorneys' fees and costs previously awarded to petitioner on an interim basis.

As previously stated, petitioner requested $34,938.50 in attorneys' fees for the period between January 2006 and April 2009. Petitioner's fee application sought compensation for Mr. Gage at Washington, DC rates, which petitioner contends ranged from $360 per hour in 2006 to $410 per hour in 2009. Petitioner derived those proposed forum rates from the *Laffey* matrix, which is sometimes used to determine reasonable attorneys' fees under various fee-shifting statutes in cases involving complex federal litigation in the District of Columbia.[6] Petitioner

---

[5]/ Petitioner requested $34,938.50 in attorneys' fees for services rendered between 2006 and 2009, and the special master awarded $23,461.30 of that amount on an interim basis.

[6]/ The *Laffey* matrix is so named because it was first submitted to the district court as part of the plaintiffs' application for attorneys' fees in *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983). In that case, the court awarded more than fifty million dollars in damages to approximately 3300 female flight attendants for gender discrimination in violation of Title VII and the Equal Pay Act. The matrix purported to represent the prevailing rates for litigators with varying levels of skill and experience practicing in the District of Columbia. Although the district court awarded attorneys' fees based on the matrix, the United States Court of Appeals for the District of Columbia Circuit reversed, holding that plaintiffs should be reimbursed for reasonable attorneys' fees only at their attorneys' established billing rates rather than the rates generally prevailing in the District of Columbia. *Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984). In a subsequent *en banc* decision, however, the District of Columbia Circuit overruled its earlier holding in *Laffey*. *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (*en banc*). The *Laffey* matrix is now maintained and periodically updated
(continued...)

argued before the special master that compensation pursuant to the *Laffey* matrix was appropriate in this case because the representation of petitioners in Vaccine Act cases is a clear example of complex federal litigation.

In contrast, respondent argued that Mr. Gage should be compensated at the hourly rates prevailing in the local market of Cheyenne, Wyoming because his office is located there and nearly all of the legal services rendered in connection with this case were performed there. Pointing to the so-called *Davis County* exception adopted by the United States Court of Appeals for the Federal Circuit in *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008) (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999) (*Davis County*)), respondent argued that forum rates are not appropriate in this case. According to respondent, the Federal Circuit held in *Avera* that local rates are the proper measure of compensation for attorneys' fees when most of the work is performed outside of the forum and there is a very significant difference between forum rates and the local market rates in the location of the attorney's practice.

In his final fees decision, the special master held that petitioner's counsel was not entitled to forum rates under *Avera*. The special master first found that none of the legal services rendered by Mr. Gage in connection with this case were performed in Washington, DC, and petitioner has not challenged that finding in her motion for review. Next, the special master set about to determine the reasonable hourly rate for Mr. Gage's services in Cheyenne. In awarding attorneys' fees to petitioner for Mr. Gage, the special master determined that the reasonable local rate for Mr. Gage in 2006 was $220 per hour. He then adjusted that figure for inflation, which resulted in local hourly rates for Mr. Gage in the amount of $230 in 2007 and $240 in 2008 and 2009. Final Fees Opin. at 30, Table 5. Petitioner has not challenged the special master's determination of Mr. Gage's local rate in her motion for review. The special master then determined that reasonable rates for Vaccine Act litigation in Washington, DC range from $250 to $375 per hour, and

---

[6]/ (...continued)
by the United States Attorney's Office for the District of Columbia and has been used to calculate awards of reasonable attorneys' fees in cases involving complex federal litigation in the District of Columbia. *See, e.g.*, *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (holding that the trial court did not abuse its discretion in awarding attorneys' fees based on prevailing market rates as set forth in the updated *Laffey* matrix).

that the appropriate forum rate for Mr. Gage's legal services was $350 per hour.[7] Petitioner has not challenged the special master's determination of Mr. Gage's forum rate in her motion for review. The special master concluded that the difference between the local rate and the forum rate in this case was "very significant," and therefore awarded fees to petitioner based on the local rate.

## IV.   Petitioner's Motion for Review

On November 5, 2009, petitioner filed a motion for review of the special master's final fees decision. In her motion, Ms. Hall contends that the special master committed two distinct errors in declining to award attorneys' fees based on forum rates. First, petitioner argues that the so-called *Davis County* exception to the general forum-rates rule set forth in the Federal Circuit's decision in *Avera* is no longer good law following the decision of the United States Supreme Court in *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571 (2008). Ms. Hall argues that attorneys representing petitioners in Vaccine Act cases – and in any other type of litigation under a mandatory fee-shifting statute, for that matter – must always be compensated at forum rates. Second, petitioner claims that the special master erred in determining that there was a very significant difference between local market rates and forum rates in this case. According to Ms. Hall, the discrepancy between those two rates is insubstantial.

On December 7, 2009, respondent filed a response to petitioner's motion for review. Respondent first argues that the Supreme Court's *Richlin* decision in no way affected the validity or applicability of the *Davis County* exception as set forth in *Avera*. In addition, respondent contends that the special master correctly found that there is a very significant difference between rates in Washington, DC and those prevailing in Mr. Gage's local market of Cheyenne. According to respondent, the decision of the special master should be affirmed because it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

---

[7]/ In determining the reasonable forum rate, the special master held that the *Laffey* matrix was inapplicable because practice in the vaccine program does not constitute complex federal litigation. Petitioner has not challenged that determination in her motion for review.

**DISCUSSION**

**I.     Standard of Review**

This court has jurisdiction to review the decisions of a special master in a Vaccine Act case.  42 U.S.C. § 300aa-12(e)(2).  As defined by Rule 13(b) of the Vaccine Rules of this court, an award of attorneys' fees and costs is "a separate decision" subject to review by one of the judges of this court.  "Under the Vaccine Act, the Court of Federal Claims reviews the decision of the special master to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'"  *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1350 (Fed. Cir. 2008) (quoting 42 U.S.C. § 300aa-12(e)(2)(B) and citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1277 (Fed. Cir. 2005)) (alteration in original).

This court uses three distinct standards of review in Vaccine Act cases, depending upon which aspect of a special master's judgment is under scrutiny:

> These standards vary in application as well as degree of deference.  Each standard applies to a different aspect of the judgment.  Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard.

*Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

The special master's determination of reasonable attorneys' fees and costs in a Vaccine Act case is a discretionary ruling that is entitled to deference from this court.  *See, e.g.*, *Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (stating that "fee determinations are within the discretion of a trial forum and are entitled to deference") (citations omitted); *Wasson by Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991) ("A request for attorneys' fees and expenses should not result in another extensive proceeding, and the special master is given reasonably broad discretion when calculating such awards." (citing *Hensley v. Eckerhart*, 461 U.S.

424, 437 (1983))), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993) (table).

"To overturn a discretionary ruling of a [fact finder], the appellant must establish that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the . . . court." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (*en banc* in relevant part) (internal quotations and citation omitted).

## II.   Petitioner's Specific Allegations of Error

The scope of the court's review in this case is narrow.[8] Petitioner raises only two issues in her motion for review. First, petitioner argues that the special master should not have applied the *Davis County* exception to the forum-rates rule because the Supreme Court has repudiated one of the central premises of that exception – *i.e.*, the policy against windfall awards of attorneys' fees. Second, petitioner argues that, even if the *Davis County* exception is still good law, the special master nonetheless erred in finding that there is a very significant difference between local market rates in Cheyenne and forum rates in Washington, DC. Ms. Hall has not challenged the special master's conclusion that the *Laffey* matrix is inapplicable in determining forum rates in Vaccine Act cases, nor has she challenged the special master's determination of either local market rates or forum rates for Mr. Gage.[9]

---

[8]/ The majority of the special master's final fees decision was devoted to the determination of reasonable local rates and forum rates for Mr. Gage's services and the related issue of whether practice in the vaccine program is comparable to the types of complex federal litigation to which the *Laffey* matrix is typically applied. The affidavits submitted by petitioner relate to the complexity of litigation under the Vaccine Act and the reasonable rates for the legal services of Mr. Gage in both Cheyenne, Wyoming and Washington, DC. Petitioner has not challenged any of the special master's findings on those issues.

[9]/ The Federal Circuit has not directly addressed whether the calculation of reasonable attorneys' fees pursuant to the *Laffey* matrix is permitted in Vaccine Act litigation. *See Avera*, 515 F.3d at 1350 ("We thus have no occasion to determine whether the so-called *Laffey* Matrix should play any role in the determination of fees under the Vaccine Act in those cases where forum rates are utilized."). This court endorsed the use of the *Laffey* matrix in setting reasonable attorneys' fees in one non-vaccine case. *See First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 88 Fed. Cl. 572, 586 (2009) (holding that the *Laffey* matrix provides a useful

(continued...)

A.    **The Special Master's Application of the *Davis County* Exception to the Forum-Rates Rule**

Successful petitioners in cases filed under the Vaccine Act are entitled to compensation for "reasonable attorneys' fees." 42 U.S.C. § 300aa-15(e)(1)(A). In determining whether a proposed award of attorneys' fees is reasonable, this court applies the lodestar method. In calculating the lodestar, the special master first determines an initial estimate of reasonable attorneys' fees based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the special master may adjust that initial estimate based on the unique circumstances of each case. *Id.* at 434. Petitioners are to be compensated pursuant to prevailing market rates, which the United States Supreme Court has defined as the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The fee applicant carries the burden of establishing the prevailing market rate. *Id.* at 895 n.11.

For many years, the special masters and judges of this court awarded attorneys' fees based on the hourly rates prevailing in the local market in which the petitioner's attorney resided and maintained an office. *See, e.g.*, *Avera v. Sec'y of Health & Human Servs.*, 75 Fed. Cl. 400, 403 (2007) ("Our court has endorsed a 'traditional geographic rule' to define the attorney's relevant community."), *aff'd on other grounds*, 515 F.3d 1343 (Fed. Cir. 2008); *Rupert ex rel. Rupert v. Sec'y of Dep't of Health & Human Servs.*, 52 Fed. Cl. 684, 688-92 (2002) (holding that special masters are required to determine reasonable attorneys' fees in accordance with the prevailing rates in the attorneys' local geographic markets).

In 2008, however, the Federal Circuit held that attorneys representing petitioners in Vaccine Act cases should generally be compensated in accordance

---

⁹/ (...continued)
guide for determining reasonable attorneys' fees in complex federal litigation in the District of Columbia). On the other hand, this court has also upheld the holding of a special master that *Laffey* matrix rates are inapplicable in Vaccine Act litigation. *See Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2010 WL 675162, at *20 (Fed. Cl. Feb. 22, 2010) (holding that "petitioner's objections to the special master's rejection of the *Laffey* matrix and the adjusted *Laffey* matrix as prima facie evidence of the forum rate for Vaccine Act cases lack merit").

with the hourly rates prevailing in the forum market of Washington, DC. *Avera*, 515 F.3d at 1347-49. Notwithstanding that general rule, however, the Federal Circuit further held that forum rates are not appropriate when "'the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a *very significant* difference in compensation favoring D.C.'" *Id.* at 1349 (quoting *Davis County*, 169 F.3d at 758). Relying on the decision of the District of Columbia Circuit in *Davis County*, the Federal Circuit explained that the exception "represents a sound approach to setting the reasonable rate of attorneys' fees in Vaccine Act cases in which the bulk of the work is done outside of the District of Columbia in a legal market where the prevailing attorneys' rates are substantially lower." *Id.* at 1349. In describing the underlying purpose of the *Davis County* exception, the Federal Circuit noted that the District of Columbia Circuit "found that the exception 'better reflects the purpose of fee shifting statutes' since it prevents a result that 'would produce windfalls inconsistent with congressional intent.'" *Id.* (quoting *Davis County*, 169 F.3d at 759-60).

The special master applied the *Davis County* exception to petitioner's fee request in this case. In her motion for review, Ms. Hall argues that the *Davis County* exception is no longer good law because the "Supreme Court's holding in *Richlin* clearly repudiates the 'windfall' exception to the forum rates rule." Pet.'s Mem. at 12. As a result, according to petitioner, "the *Davis* [*County*] exception to the forum rates rule is no longer in force in this, or any other federal program which employs a fee shifting mandate." *Id.*

This court is bound by the precedential decisions of the Federal Circuit. For this court to disregard *Avera* as controlling precedent, petitioner must convince the court that it is no longer bound by that case. As discussed below, petitioner misconstrues the Supreme Court's decision in *Richlin*, and her arguments based on that case are without merit.

The Federal Circuit has reminded this court that

> the Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court. Trial courts are not free to make the law anew simply because they disagree with the precedential and

11

authoritative analysis of a reviewing appellate court.

*Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005). Thus, even if this court believed that *Avera* was wrongly decided, which it does not, it is not free to revisit the issues decided in that case. "There are two narrow exceptions [to this rule]: if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision." *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) (citing *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1372 (Fed. Cir. 2000)). None of petitioner's arguments fits within the narrow exceptions mentioned in *Strickland* that would allow this court to disregard *Avera*.

Petitioner has not argued that *Avera* has been overruled by any statute, nor is this court aware of any statute requiring the reimbursement of attorneys' fees at forum rates in Vaccine Act cases. Petitioner must therefore demonstrate that the Federal Circuit's adoption of the *Davis County* exception in *Avera* has been expressly overruled by the United States Supreme Court in a subsequent case. As discussed below, the Supreme Court's decision in *Richlin* did not overrule *Avera*, expressly or otherwise, and thus cannot provide any justification for this court to disregard *Avera*.

The issue addressed by the Supreme Court in *Richlin* was whether prevailing parties seeking compensation for paralegal services under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(a)(l) (2006) and 28 U.S.C. § 2412(d)(1)(A) (2006), were entitled to compensation based on the cost of those services to the law firm or on prevailing market rates. In that case, the Department of Transportation Board of Contract Appeals held that the plaintiff was entitled to compensation for paralegal services only at the cost of those services to the law firm. The Federal Circuit affirmed the Board's decision, holding that the costs attributable to paralegal services did not constitute "attorneys' fees" under EAJA and were therefore recoverable only as "expenses" on the basis of their cost to the firm. The court explained that its decision was dictated by both the text and the legislative history of EAJA. In addition, the court noted that a contrary holding would result in an inefficient allocation of legal services between attorneys and paralegals. Because EAJA capped all "fees" at $125 per hour, the Federal Circuit surmised that the treatment of paralegal costs as fees instead of expenses would cause law firms to divert an excessive share of legal work to relatively low-cost paralegals.

The Supreme Court reversed the judgment of the Federal Circuit. In holding

that EAJA allowed the recovery of paralegal fees at prevailing market rates, the Court noted that the Federal Circuit's policy concerns – *i.e.*, that reimbursement for paralegal services at market rates would result in the excessive utilization of paralegals for legal work – was irrelevant because it was inconsistent with the plain meaning of the statute.  The Court's decision did not mention, much less overrule, either *Avera* or the Federal Circuit's adoption of the *Davis County* exception in that case.  Nor did the decision repudiate, as petitioner argues, the policy against windfall awards of attorneys' fees and costs.  The policy referenced by the Federal Circuit in support of its decision in *Richlin* – and subsequently deemed to be irrelevant by the Supreme Court – was the prevention of an inefficient allocation of legal services between attorneys and paralegals.  The sole reference to the policy against windfalls in *Richlin* is located within a parenthetical description of *Missouri v. Jenkins*, 491 U.S. 274 (1989), in which the Supreme Court held that the compensation of prevailing plaintiffs for paralegal services at prevailing market rates would not result in windfalls for the attorneys representing those plaintiffs.  Such a proposition bears no relevance to the present case and, thus, the language cited by petitioner provides no support for its arguments.

*Richlin* did not expressly overrule *Avera*, nor did it affect the validity or applicability of the *Davis County* exception to the forum-rates rule.  This court may not ignore the binding precedent of the Federal Circuit unless the United States Supreme Court or a federal statute expressly overrules that precedent.  *Strickland*, 423 F.3d at 1338.  Because neither Congress nor the Supreme Court has expressly overruled *Avera*, the special master committed no error in applying the *Davis County* exception in this case.

> **B.  The Special Master's Determination That There Was a Very Significant Difference between Forum Rates and Local Rates**

Petitioner further argues that even if the *Davis County* exception is still good law, the special master erroneously determined that there is a very significant difference between local market rates in Cheyenne and forum market rates in Washington, DC.  For the reasons discussed below, the court concludes that the special master's determination was reasonable.

As noted above, the special master determined that the local market rate for

Mr. Gage's services in Cheyenne was $220 per hour.[10]  The special master also determined that the reasonable hourly rate for Mr. Gage's services in the forum market of Washington, DC was $350.  Petitioner has not challenged either of those findings.  The special master reviewed several cases applying the *Davis County* exception and concluded that the difference between the local market rate and the forum rate in this case was very significant.  Based on that finding, the special master awarded attorneys' fees to petitioner based on the local rates prevailing in the Cheyenne legal market.

Petitioner asserts that the difference between local market rates and forum rates is not very significant in this case.  First, petitioner states that the gap between local rates and forum rates here pales in comparison to the discrepancy between those two rates in *Avera*:

> 240 divided by 350 equals .6857.  Therefore, $240 is 68.6% of $350.  This represents a difference is [*sic*] less than 32%.  In dollars, this represents a difference of $110.  By contrast, the Federal Circuit found that the 'significantly higher' rate that Mr. Moxley was requesting in *Avera* was almost three times the amount of his previous request and represented an increase of $398 per-hour.

Pet.'s Mem. at 15-16.

Petitioner further notes that the special master made a determination that the reasonable range of attorneys' fees in the Washington, DC forum market is between $250 and $375 per hour.  Because there is only a ten-dollar difference between the reasonable 2008-2009 rate for Mr. Gage's services in the local market of Cheyenne ($240) and the low end of the range for forum rates in Washington, DC ($250), petitioner contends that there is not a very significant difference between fees in those markets.

---

[10]/ The special master determined that the reasonable local rate for Mr. Gage's legal services was $220 per hour in 2006.  Final Fees Opin. at 30, Table 5.  He then adjusted that figure for inflation, resulting in hourly rates of $230 for 2007 and $240 for 2008 and 2009.  *Id.* In comparing local rates and forum rates, petitioner relies on the local rate applicable in 2008 and 2009.

Both of petitioner's arguments on this issue are unavailing. First, petitioner has made no attempt to distinguish or otherwise address any of the cases upon which the special master relied in finding that there was a very significant difference between local market rates and forum rates in this case. Although the magnitude of the difference between those rates was significantly larger in *Avera* than in the present case, the Federal Circuit has not attempted to define the lower limit of what constitutes a "very significant difference." In addition to *Avera*, the special master discussed three cases under the Vaccine Act in which a special master determined that there was a very significant difference between local rates and forum rates. In *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627V, 2008 WL 4426040, (Fed. Cl. Spec. Mstr. Sept. 23, 2008), *rev'd on other grounds*, 86 Fed. Cl. 201 (2009), for example, the special master determined that an attorney's local rate was $300 per hour and his forum rate was $440 per hour. In holding that the difference between those two rates was very significant, the special master noted that there was a difference of $140 between the forum rate and the local rate, and that the former was approximately forty-seven percent higher than the latter.

In *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, (Fed. Cl. Spec. Mstr. June 12, 2009), *aff'd*, (Fed. Cl. Dec. 10, 2009), the special master found that the $130 difference between the local rate of $220 and the forum rate of $350 was very significant. *Masias* is particularly relevant here, because the attorney of record in that case was Robert Moxley, Mr. Gage's former law partner.[11] The forum rate in that case was approximately fifty-nine percent higher than the local rate, which is the same difference between those rates in the case at bar.

Finally, in *Rodriguez v. Sec'y of Dep't of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, (Fed. Cl. Spec. Mstr. July 27, 2009), *aff'd* 2010 WL 675162, (Fed. Cl. Feb. 22, 2010), the special master held that the *Davis County* exception did not apply because the local market rate was higher than the forum rate.[12] The special master nonetheless held that there was a very significant

---

[11]/ Mr. Moxley was also the attorney of record in *Avera*, 515 F.3d at 1345.

[12]/ In *Avera*, 515 F.3d at 1349, the Federal Circuit held that the *Davis County* exception applies only when there is a very significant difference between local rates and forum rates

(continued...)

15

difference between the forum rate of $275 per hour and the local rate of $450 per hour. The local rate in that case was approximately sixty-four percent higher than the forum rate.

The $130 discrepancy between local rates and forum rates in this case is in line with the "very significant differences" found in the cases noted above. Indeed, the local rate and forum rate in this case are identical to the rates discussed in *Masias*. Petitioner argues, however, that special masters may not properly determine what constitutes a very significant difference between forum rates and local rates in any particular case. According to petitioner, that is a legal question that may be resolved only by the judges of this court. All three of the decisions discussed above, however, were appealed to this court. Both *Masias* and *Rodriguez* were affirmed, and the special master's decision in *Sabella* was reversed on an unrelated ground.

Although the court agrees with the special master's determination that there is a very significant difference between forum rates and local rates in this case, petitioner is correct in her observation that Vaccine Act petitioners should not be placed in the difficult position of "facing completely divergent results as each special master deals with this question as if it were a question of fact each time a new fee petition is filed." Pl.'s Mem. at 14. In the absence of guidance from the Federal Circuit on this issue, the court hereby holds that, under the circumstances of this case, the difference between forum rates and local rates is very significant since the former is more than fifty percent higher than the latter.[13] As noted above,

---

[12]/ (...continued)
*favoring the District of Columbia.*

[13]/ The court believes that the use of a percentage to express the difference between forum rates and local rates is preferable to the use of an absolute dollar amount. Depending upon the magnitude of the rates being compared, a discrepancy of $150 may or may not constitute a very significant difference. For example, most people would consider the difference between $50 and $200 to be very significant. On the other hand, the difference between $1000 and $1150 would not generally be viewed as very significant. In contrast, a difference of approximately fifty percent will represent a very significant difference regardless of the magnitude of the rates being compared. There are, of course, a number of different ways in which to express the relationship between two figures as a percentage. In this case, for example, the forum rate is fifty-nine percent higher than the local rate. At the same time, the local rate is
(continued...)

the forum rate for Mr. Gage's services is fifty-nine percent higher than the local rate in Cheyenne.[14]

In addition, it is of no consequence that there is only a ten-dollar difference between the high end of the local market rate applicable to Mr. Gage in 2008-2009 and the lower limit of the range of forum rates established by the special master. The special master determined that the reasonable rate for Mr. Gage's services in the forum market of Washington, DC was $350 per hour, and petitioner has not challenged that determination. Because the rates at the bottom of the forum range do not apply to Mr. Gage, petitioner's apples-to-oranges comparison in no way undermines the special master's finding that there is a very significant difference between local rates in Cheyenne and those prevailing in the forum. The court concludes that the special master's determination that there is a very significant difference between prevailing market rates in Mr. Gage's local market of Cheyenne and those prevailing in the forum market of Washington, DC was reasonable.

---

[13]/ (...continued)
thirty-seven percent lower than the forum rate, and the local rate represents approximately sixty-nine percent of the forum rate. Here, the court holds that a difference is very significant *when the forum rate is approximately fifty percent higher than the local rate*. In order to derive that percentage, the local rate was subtracted from the forum rate, and the difference between those two figures was divided by the local rate. With the resulting quotient being greater than 0.5, the difference is deemed to be very significant.

[14]/ The court notes that the difference between the local rate and the forum rate would be approximately fifty percent regardless of which local rate is used for comparison. As noted above, the forum rate is fifty-nine percent higher than the 2006 local rate. The forum rate is approximately fifty-two percent higher than the 2007 local rate and approximately forty-six percent higher than the local rate in 2008 and 2009. It appears that the forum rate of $350 for Mr. Gage's services is the rate that would have applied in 2006. *See* Final Fees Opin. at 24 (comparing the forum rate of $350 with the 2006 local rate of $220). Because, beginning with the 2006 local rate, the special master adjusted the 2006-2009 local rates for inflation, the corresponding forum rates must be similarly adjusted. Using the same inflation rates the special master applied to the 2006-2009 local rates would result in forum rates of approximately $371 in 2007 and $381 in 2008 and 2009. Thus, the forum rate would remain approximately fifty-nine percent higher than the local rate in all contested years.

**III.     The Parties' Joint Motion for Relief**

The parties have filed a joint motion for relief pursuant to RCFC 60(a). That rule provides that the "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." RCFC 60(a). In the final fees decision, the special master awarded petitioner $22,018 in attorneys' fees for services rendered between 2006 and 2009. Final Fees Opin. at 37. The special master noted that he was awarding those fees "in addition to the amount Ms. Hall previously received in attorneys' fees." *Id.* As noted by the parties in their joint motion, however, petitioner had already been awarded $23,461.30 on an interim basis for those same hours. The parties request that the court deduct the attorneys' fees awarded for the period between 2006 and 2009 on an interim basis from the fees and costs subsequently awarded to petitioner in the final fees decision. Because the court agrees that the two fee decisions issued by the special master inadvertently awarded compensation for the same hours, the court hereby grants the parties' joint motion and orders that the total compensation awarded in the final fees decision be reduced from $25,693 to $2,231.70.

**CONCLUSION**

For all of the above reasons, the court holds that the special master's attorneys' fees award to petitioner was not an abuse of his discretion.

Accordingly, it is hereby **ORDERED** that

(1)   Petitioner's Motion for Review, filed on November 5, 2009, is **DENIED**;

(2)   Petitioner's and Respondent's Joint Motion for Rule 60(a) Relief, filed on December 7, 2009, is **GRANTED**, and $23,461.30 is hereby deducted from the award of attorneys' fees and costs set forth in the October 6, 2009 decision of the special master, resulting in a final payment of attorneys' fees and costs of $2,231.70; in all other respects, the decision of the special master is **AFFIRMED**;

(3)   The Clerk's Office is directed to **ENTER** judgment in accordance with this opinion; and

(4) The parties shall separately **FILE** any proposed redactions to this opinion, with the text to be redacted clearly marked out or otherwise indicated in brackets, on or before **April 23, 2010**.

/s/ Lynn J. Bush
LYNN J. BUSH
Judge

cc:   Special Master Christian J. Moran